Little Bay Lobster, et al. v. Daley   CV-00-007-M   01/12/01
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Little Bay Lobster Co.,
Amy Philbrick, L.L.C.,
Carol Coles, L.L.C.,
Eulah McGrath, L.L.C.,
Jennifer Anne, L.L.C.,
Jacqueline Robin, L.L.C.,
Michele Jeanne, L.L.C., and
Amy Michele, L.L.C.,
        Plaintiffs

        v.                                  Civil No. 00-007-M
                                            Opinion No. 2001 DNH 012
Honorable William M. Daley, as the
Secretary of Commerce,
        Defendant


                           **O R D E R**


        Plaintiffs, all New Hampshire residents engaged in

lobstering, bring this action to challenge the newly established

boundary line between inshore and offshore waters along the

coasts of New Hampshire, Maine, and Massachusetts.  See 50 C.F.R.

§ 697.18 (2000).  The Defendant Secretary of Commerce has moved

to transfer the case to the District of Rhode Island, pursuant to

28 U.S.C. § 1404(a) (document no. 5).  Plaintiffs object.

## Factual Background

Plaintiffs are all New Hampshire companies engaged in the lobstering business. Each plaintiff that operates a vessel holds a permit to fish in the Economic Exclusive Zone (EEZ) (3 to 200 nautical miles from shore). Plaintiff Little Bay Lobster, Co., does not operate a vessel, but purchases lobsters from the other plaintiffs and sells them to retail and wholesale outlets. Studies indicate that plaintiffs are responsible for approximately 80% of lobsters landed in New Hampshire and for roughly 50% of the total economic impact on the New Hampshire commercial fishing industry.

The Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act), 16 U.S.C. §§ 1801 et seq. (2000), empowers the Secretary of Commerce (Secretary), acting through the National Marine Fisheries Service (NMFS), to regulate the lobster fishery in the EEZ and creates regional fishery management councils, which develop Fishery Management Plans (FMP). See 16 U.S.C. §§ 1852-1853. The regional councils submit proposed FMPs to NMFS, which in turn evaluates the proposed management plans and takes action by approving, disapproving, or

modifying the submitted plans.  If NMFS approves a plan, it promulgates regulations necessary to implement it.

Sometime prior to 1993, the New England Fishery Management Council (NEFMC) developed and submitted the American Lobster FMP. NMFS approved that management plan and implemented it via regulations set out in 50 C.F.R. Part 649.  NEFMC also established Effort Management Teams (EMT), which first developed the concept of dividing the lobster fishery into regulatory or management areas.  Through an industry-wide consensus, the EMTs created five fishery zones in an effort to equally divide fishing grounds based on customary practices.  As part of this management effort, the offshore fishing fleet, including plaintiffs, agreed to a boundary line that had the effect of limiting the offshore fishery in the Gulf of Maine to an area beyond thirty miles from the coast.  That limitation required the offshore fleet to give up fishing in the federal waters of the EEZ between three and thirty miles offshore.  The concession was made in an effort to conserve natural resources.  The zones, including the accepted boundary line, were never adopted by NMSF, but have served as the basis for management discussions since 1993.

Also in 1993, management measures provided for under the Magnuson-Stevens Act were supplemented by the Atlantic Coastal Fisheries Cooperative Management Act (ACFCMA), 16 U.S.C. §§ 5101 et seq. Like the Magnuson-Stevens Act, the ACFCMA authorized the Secretary to promulgate regulations governing fishing in the EEZ. That power can be exercised, however, only in the absence of an approved and implemented FMP under the Magnuson-Stevens Act, and then only after consultation with the appropriate fishery management council.

In March of 1996, NMFS proposed withdrawing its approval of the American Lobster FMP, but not until the Atlantic States Marine Fisheries Commission (ASMFC) developed an Interstate Fishery Management Plan (ISFMP). An American Lobster ISFMP was later adopted and ASFMC approved Amendment 3 to that plan in December of 1997. Accepting Amendment 3 as a "comprehensive plan for managing the lobster fishery in state and federal waters," NMFS rescinded approval of the American Lobster FMP, along with its implementing regulations. On December 6, 1999, NMFS reissued pertinent regulations, effective January 5, 2000. See 50 C.F.R. Part 697.

This litigation challenges those regulations to the extent they set "the boundary line between EEZ Nearshore Management Area 1 and EEZ Offshore management Area 3," see 50 C.F.R. § 697.18 (2000), and shift the boundary line in the Gulf of Maine approximately 20 miles farther offshore, causing plaintiffs to lose approximately 2000 square miles of previously available fishing ground (the source of approximately 30% of plaintiffs' landings from Northern Waters). Plaintiffs also challenge the propriety of the Secretary's (acting through NMFS) rescinding approval of the American Lobster FMP.

## Discussion

The Secretary moves, pursuant to 28 U.S.C. 1404(a), to transfer this case to the United States District Court for the District of Rhode Island. Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district where it might have been brought.

Authority to transfer a case pursuant to 28 U.S.C. 1404(a) is committed to the court's broad discretion. United States ex rel. LaValley v. First Nat'l. Bank, 625 F.Supp. 591, 594 (D.N.H.

5

1985).  Although no single factor is dispositive, a court should consider:

> (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) [the] cost of obtaining willing witnesses, and (6) any practical problems associated with trying the case most expeditiously and inexpensively.

F.A.I. Electronics Corp. v. Chambers, 944 F.Supp. 77, 80-81 (D.Mass. 1996) (citation omitted); see also Buckley v. McGraw-Hill, Inc., 762 F.Supp. 430, 439 (D.N.H. 1991) (when ruling upon a motion to transfer under Section 1404(a), the court will consider such factors as the "convenience of the parties and witnesses and the availability of documents needed for evidence.").  Here, the Secretary bears the burden of demonstrating that those factors weigh in favor of transfer. Buckley, 762 F.Supp. at 439.  "[T]he Supreme Court has held that '[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

Because plaintiffs are challenging the action of an administrative agency under the Administrative Procedures Act, 5

U.S.C. §§ 701 et seq., the scope of judicial review is limited to the administrative record. Accordingly, both parties concede that it is unlikely any witnesses will be called. So the convenience of witnesses, the availability of process, and the cost of obtaining witnesses are not serious factors. The Secretary argues that transfer is nonetheless appropriate because three cases challenging the same regulations are currently pending in the District of Rhode Island, and because the cost of duplicating the administrative record here would be a waste of taxpayers' money.

Even assuming plaintiffs could have originally brought this suit in the District of Rhode Island, the Secretary has not met his substantial burden of justifying transfer. While it is true that this case is facially similar to cases pending in Rhode Island, it is also sufficiently different to counsel against transfer. This case and the Rhode Island cases all challenge the propriety of the Secretary' recission of the American Lobster FMP, and all the cases question whether the Secretary properly considered alternatives, and the economic impact on the states and the lobstermen, before doing so. However, except for the propriety of rescinding approval, the facts and analysis

7

necessary to resolve the questions presented in the Rhode Island cases differ markedly from those pertinent to resolving this case.

The Rhode Island cases challenge restrictions found in portions of 50 C.F.R. Part 697 related to equipment, and dispute whether the Secretary adequately considered the economic impact on Rhode Island and its lobstermen. In contrast, this case focuses on the New Hampshire inshore waters boundary and the economic impact on New Hampshire and its lobstermen. The potential effect on Rhode Island of equipment limitations is substantially distinct from the effect changing the boundary line might have on New Hampshire's industry.

Additionally, contrary to the Secretary's view, given the sizeable role plaintiffs play in the New Hampshire commercial fishing industry, the potential harm associated with changing the inshore/offshore boundary line in the Gulf of Maine certainly implicates significant local interests. Thus, notwithstanding the Secretary's concern about costs associated with producing the administrative record, different operative facts, deference to plaintiffs' choice of forum, and distinct legal issues, all

8

militate against transfer.  The Secretary's contrary arguments are insufficient to shift the balance in his favor; plaintiffs' choice of venue will be respected.

## Conclusion

Because the Secretary has not met his substantial burden to shift the balance in his favor, the motion for transfer of venue (document no. 5) is denied.  In accordance with this court's order of March 30, 2000 (document no. 6), the Secretary's answer to the Complaint is due thirty days from the date of this order.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 12, 2001

cc:  Charles R. Powell, III, Esq.
     Mark A. McSally, Esq.